GREAT SCOTT! SUPER MARKETS, INC v GOODMAN

LABOR RELATIONS—COLLECTIVE BARGAINING AGREEMENTS—NO-STRIKE
    PROVISIONS—BREACH—LIABILITY—UNION MEMBERS.

A damage action against individual union members for breach of
. a no-strike clause in a collective bargaining agreement was
properly dismissed where the collective bargaining agreement
provided for explicit specifications of discipline and discharge as
the remedies in cases of unauthorized strike actions; such a
result is buttressed by a strong congressional policy against
holding individual union members liable in money damages in
suits for breach of collective bargaining agreements.

Appeal from Wayne, George T. Martin, J. Submitted Division 1 October 9, 1973, at Detroit. (Docket No. 15635.) Decided November 29, 1973. Leave to appeal denied, 391 Mich —.

Complaint by Great Scott! Super Markets, Inc., against William Goodman and others to enjoin a strike and for damages incurred during the strike. Complaint dismissed. Plaintiff appeals. Affirmed.

*Hyman & Rice* (by *Irwin Alterman),* for plaintiff.

*Rothe, Mazey & Mazey, P. C.,* for defendants.

Before: LESINSKI, C. J., and R. B. BURNS and QUINN, JJ.

LESINSKI, C. J. Plaintiff Great Scott! Super · Markets filed this suit against several employees, members of the Teamsters Union, in order to

REFERENCE FOR POINTS IN HEADNOTE
53 Am Jur 2d, Master and Servant § 406.

enjoin a wildcat strike. After a temporary restraining order was granted, plaintiff filed an amended complaint which added a claim for damages against the individual defendants.

Both parties agree that the strike actions by the defendants were unauthorized by the union. On the theory that a money judgment could not be entered against individual members of a union under preempting Federal labor law, the attorney for several defendants filed a motion to dismiss the amended complaint for failure to state a claim. The trial court granted the motion to dismiss, denied a subsequent motion for rehearing and/or new trial and for leave to file a second amended complaint, and entered an order dismissing the action against all defendants since the rule of law established in the argued motion governed the action against the remaining defendants.

The parties on appeal from the trial court's orders present a single issue: In a state court suit under the Labor-Management Relations Act (Taft-Hartley Act), § 301, 61 Stat 156 (1947), 29 USC 185, can an employer recover damages from individual employees for breach of a no-strike clause in the collective bargaining agreement when the union did not authorize the strike?

It is settled that § 301 suits for breach of collective bargaining agreements are governed by Federal law. *Textile Workers Union of America v Lincoln Mills,* 353 US 448; 77 S Ct 912; 1 L Ed 2d 972 (1957); *Atkinson v Sinclair Refining Co,* 370 US 238; 82 S Ct 1318; 8 L Ed 2d 462 (1962). Federal law, however, is unsettled on the precise point at issue. In *Atkinson v Sinclair Refining Co, supra,* the United States Supreme Court, when confronted with a damages count against individual union members, dismissed the count since the

Court found the union liable and clearly reserved the question presented in the instant case:

"[W]e therefore do not reach the question of whether the count would state a proper § 301(a) claim if it charged unauthorized, individual action." 370 US 249, n 7; 82 S Ct 1325, n 7; 8 L Ed 2d 471, n 7.

A review of Federal court decisions indicates a split between the only two cases found which have decided the issue in question. In *DuQuoin Packing Co v Local P-156,* 321 F Supp 1230 (ED Ill, 1971), a Federal district court decided that § 301 allowed a damages suit against individual members for unauthorized no-strike breaches, whereas the Seventh Circuit came to the opposite conclusion in *Sinclair Oil Corp v Oil, Chemical and Atomic Workers International Union,* 452 F2d 49 (CA 7, 1971).

Regardless of this issue's ultimate disposition in the Federal courts, the instant case can be resolved by resort to the collective bargaining agreement accepted by the plaintiff.

The agreement, in Article VIII, specifically provides for the employer's remedy in the event of unauthorized strike actions:

"*Section 3.* It is further agreed that in all cases of any unauthorized strike, slow-down, walkout or any unauthorized cessation of work, the Union shall not be liable for damage resulting from such unauthorized acts of its members. While the Union shall undertake every reasonable means to induce such employees to return to their jobs during any such period of unauthorized stoppage of work mentioned above, it is specifically understood and agreed that the Company during the first twenty-four (24) hours of such unauthorized work stoppages shall have the sole and complete right or reasonable discipline short of discharge. Such Union member

shall not be entitled to or have any recourse to any other provisions of this Agreement.

"*Section 4.* After the first twenty-four (24) hour period of such stoppage, however, the Company shall have the right to immediately discharge any Union member participating in any unauthorized strike, slow-down, walkout or any unauthorized cessation of work, and such Union member shall not be entitled to or have any recourse to any other provisions of this Agreement."

Given this explicit specification of discipline and discharge as the remedies in cases of unauthorized strike actions, we hold that these were the bargained-for recourses under the circumstances and therefore the damage action against individual union members was properly dismissed.

This result is buttressed by its consistency with the strong congressional policy against holding individual union members liable in money damages. This policy is expressed in the specific language of § 301(b) of the Taft-Hartley Act and supported by the legislative history which reflected a congressional desire to avoid the *Danbury Hatters* situation in which a large number of union members lost their homes. See 93 Cong Rec 5014 and the discussion in *Atkinson v Sinclair Refining Co, supra,* at 370 US 248–249; 82 S Ct 1324–1325; 8 L Ed 2d 470–471, and in *Sinclair Oil Corp v Oil, Chemical & Atomic Workers International Union, supra,* at 452 F2d 52–54. The following conclusion, which culminates the examination of § 301's legislative history in *Sinclair Oil, supra,* is especially pertinent:

"We agree with Sinclair that the legislative history and Congressional debates show a concern for the promotion of industrial peace through making unions liable for breaches of their bargaining agreements and to encourage bargaining of no-strike clauses in the agreement. But we do not agree that Congress thought a no-

strike clause would be valueless unless the employer were authorized to recover damages against individual union members engaging in wildcat strikes. On the contrary, Congress, in the debates over Section 301, *explicitly considered the problem of wildcat strikes and possible remedies. The remedies suggested were discharge and discipline.* There is no indication that Congress considered Section 301 itself a remedy for an aggrieved employer. We think for us to do so would constitute an unwarranted expansion of that Section.

"Moreover, Congress did consider the consequences of imposing financial responsibility on union members who engaged in *non-tortious* unprotected concerted activity as union members, in breach of a no-strike clause, and rejected it. We think the implication is that such employees are not liable—under Section 301—for such a breach even if the union did not authorize the strike." (Emphasis supplied.) *Sinclair Oil, supra,* 452 F2d at 53–54.

The above quote provides telling parallels to the instant case. Congress in § 301(b) made *unions* liable for breaches of their bargaining agreements, including actions of their agent employees. In the collective bargaining agreement in this case, reproduced earlier, Article VIII, section 3, the plaintiff explicitly contracted away its right to sue the union for unauthorized strikes.

Not only did Congress explicitly consider in the legislative history of § 301 the problem of wildcat strikes and suggest discharge and discipline as the proper remedies, as noted in the *Sinclair Oil* quote above, but the parties themselves, in their collective bargaining agreement, also explicitly considered the problem and specifically provided for the remedies of discharge and discipline. This Court is not inclined to supply the plaintiffs a remedy against individual union members in the face of congressional policy to hold *unions* liable, rather than individuals, especially in view of the unambi-

guous provisions in the collective bargaining agreement contracting away the § 301(b) right to sue the union for the complained-of acts by union agents and the clear contract provision for the remedies of discharge and discipline in unauthorized strike situations.

Affirmed. Costs to defendants.

All concurred.